**David P. SPURGEON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 95–956.

United States Court of Veterans Appeals.

April 15, 1997.

Robert C. Rhodes, Springfield, was on the brief for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Thomas

A. McLaughlin, Deputy Assistant General Counsel; and John D. McNamee, Washington, DC, were on the brief for appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

IVERS, Judge:

The appellant appeals a July 26, 1995, decision of the Board of Veterans' Appeals (BVA or Board) denying an increased rating for service-connected post-operative residuals of an osteoma removal currently rated 10% disabling. *David P. Spurgeon,* BVA 95–14582 (July 26, 1995). An osteoma is a benign, slow-growing mass of mature, predominantly lamellar (thinly layered), bone. STEDMAN'S MEDICAL DICTIONARY 1269 (26th ed. 1995) [hereinafter STEDMAN'S]. The Court has jurisdiction over this appeal pursuant to 38 U.S.C. § 7252(a). For the reasons set out below, the Court will vacate the Board's decision and remand the matter for further adjudication.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Navy from July 1, 1973, until January 12, 1976. Record (R.) at 59. In January 1974, the appellant underwent surgery for the removal of an osteoid osteoma on his right wrist. R. at 22, 80.

In March 1975, the appellant witnessed the gruesome death of his brother by an airplane propeller blade at Miramar Naval Air Station. R. at 54–56. A psychiatric examination conducted on December 18, 1975, revealed that the appellant was under great emotional stress and that he blamed the Navy for his brother's death. *Id.* The examining psychiatrist recommended immediate discharge on "psychiatric as well as humanitarian grounds." R. at 55. The appellant was honorably discharged in January 1976 for "unsuitability—apathy, defective attitudes, and inability to expend effort effectively." R. at 59.

The appellant filed for disability compensation on July 22, 1985, requesting service connection for psychological problems, right wrist tumor removal, and a right ankle problem. R. at 61–64. He was awarded service connection for post-operative residuals relating to his right wrist osteoma removal on November 18, 1985, rated noncompensable. R. at 101. The appellant was later awarded a non-service-connected disability rating for passive-aggressive personality disorder, rated 30% disabling. R. at 105–06.

On December 1, 1986, the VA regional office (RO) increased to 10% the appellant's rating for residuals of a right wrist osteoma removal. R. at 127–28. In 1988, 1990, 1991, the appellant made additional requests for an increase which the RO denied. R. at 133, 175–76, 187. In August 1993 the appellant filed a VA Form 1–9, Appeal to Board of Veterans' Appeals, perfecting his appeal to the Board and claiming service connection for post-traumatic stress disorder (PTSD). R. at 195. On January 11, 1993, the BVA remanded the claims for further adjudication and ordered the RO to afford the appellant a complete psychiatric examination and an orthopedic examination of his right wrist. R. at 247–52.

On April 3, 1993, the appellant had a complete orthopedic examination to determine the severity of his wrist disorder. R. at 258–59, 268. During that examination, the physician noted:

> [The appellant] is not able to make a fist. He has a well-healed incision over the dorsum of his right distal radius. He demonstrates strength of interossei grip, abductor pollices, adductor pollices and opponens, but these are all decreased in strength. He states that he is numb in all of the fingers of his right hand.

R. at 259. The physician observed that the appellant had 25° of dorsiflexion, 30° of palmar flexion, and 15° of ulnar and radial deviation in his right wrist. *Ibid.* With regard to the appellant's complaint of wrist pain, the examiner noted:

> The etiology, however, of his pain and lack of motion is not easily understood. He has had numerous bones [sic] scans, EMG's, etc., which apparently have shown nothing....
>
> I am not entirely sure why he continues to have the degree of pain, etc.[,] that he has had. I do feel that there is probably a

strong psychosocial overlay to this problem. Certainly if the bone scan is negative this rules out any bony pathology with regard to this.

R. at 258–59.

On March 10, 1993, the appellant underwent a VA psychiatric examination in which he was diagnosed with PTSD. R. at 263–67. The RO issued a rating decision on October 7, 1994, awarding the appellant service connection for PTSD rated at 30% disabling and continuing his 10% rating for post-operative residuals of the right wrist osteoma. R. at 285–86.

The appellant, through his service representative, notified the Board on June 14, 1995, that he believed the PTSD rating was fair and accurate but that he disagreed with the decision to deny an increased rating for his right wrist and hand. R. at 303. On July 26, 1995, the Board issued a final decision denying an increased rating for post-operative residuals on his right wrist based upon the results from the April 1993 orthopedic evaluation. *Spurgeon*, BVA 95–14582, *supra*; R. at 4–12. The appellant appealed this decision to the Court.

## II. ANALYSIS

### A. Claim for an Increased Rating Due to Pain

The appellant argues, in his brief, that the examining physician did not adequately evaluate the severity of his right wrist pain and that he is entitled to an increased rating because he suffers functional loss of his hand due to pain. Appellant's Brief (Br.) at 11–12. The appellant's claim for an increased rating for a right wrist disorder under the rating schedule is "a new claim, and the Court reviews the Board's findings of fact regarding new claims under a 'clearly erroneous' standard of review." *Cox v. Brown*, 6 Vet.App. 459, 460 (1994); *see also* 38 U.S.C. § 7261(a)(4); *Butts v. Brown*, 5 Vet.App. 532, 535 (1993)(en banc). "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have

reached the same factual determinations, we cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). The BVA is required to provide reasons or bases for any material factual or legal determination. *See* 38 U.S.C. § 7104(d)(1); *see also Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991).

Under 38 C.F.R. § 4.40 (1996), the Board is required to consider the impact of pain in making its rating determination. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991). The Board is required to provide a statement of its reasons and bases with respect to that aspect of the determination as well. *Ibid* (citing *Gilbert*, 1 Vet.App. at 58). Although section 4.40 does not require a separate rating for pain, it does promulgate guidance for determining ratings under other diagnostic codes assessing musculoskeletal function. *See generally* 38 C.F.R. § 4.71(a) (1996). The fact that a specific rating for pain is not required by section 4.40 does not relieve the BVA from its obligation to provide a statement of reasons or bases pertaining to that regulation. *See DeLuca v. Brown*, 8 Vet.App. 202, 207 (1995).

During the examination, the physician evaluated the appellant's wrist with respect to his complaints of pain and expressly stated that he could find no etiological basis for the pain. R. at 259. The physician opined that there was "probably a strong psychosocial overlay" to the problem of pain. *Ibid.* The appellant argues that, if the pain were psychosocial, the physician should have referred him to a psychiatrist and the RO should have followed up on this recommendation. Appellant's Br. at 11. Although the appellant did undergo a complete VA psychiatric examination and was eventually diagnosed with PTSD, there was no consideration given to whether his painful wrist could be attributed to his psychiatric problems. R. at 260–67. A veteran may be awarded a disability for "Somatoform Disorders." *See* 61 Fed.Reg. 52695 (Oct. 8, 1996) (renaming 38 C.F.R. § 4.132, "Psychological Factors Affecting Physical Condition," DC 9500–9511, as 38 C.F.R. § 4.130, DC 9421–9425, "Somatoform Disorders"). "Somatoform" refers to psychogenic symptoms resembling those of

physical disease. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1545 (28th ed. 1994).

In its decision, the BVA failed to discuss the appellant's pain, mention 38 C.F.R. § 4.40, or discuss the possible link between the appellant's complaints and his service-connected psychiatric condition. Where the BVA has failed to provide adequate "reasons and bases" with respect to the role, if any, that pain played in its determination, a remand is required. *See Hicks v. Brown*, 8 Vet.App. 417, 422 (1995); *Voyles v. Brown*, 5 Vet.App. 451, 453 (1993) (remanding because "it was necessary for the BVA to address both the existence and extent of [the] appellant's pain, as well as any limitation of motion due to his service-connected disabilities").

### B. Duty to Notify

■ The appellant's claim should also be remanded for the Board's failure to notify the appellant that he was responsible for furnishing employment records to support his claim that his wrist disability affected his employment.

■ A veteran is entitled to an extraschedular rating in "exceptional" cases "where the scheduler evaluations are found to be inadequate." 38 C.F.R. § 3.321(b)(1) (1996). Under this regulation, an "exceptional" case is one which presents "such an exceptional or unusual disability picture with such related factors such as *marked interference with employment* or frequent periods of hospitalization as to render impractical the application of the regular scheduler standards." *Ibid.* (emphasis added).

The appellant testified that his wrist condition "quite disturbed" his work and that he had missed 800 hours of work at the U.S. Postal Service. R. at 207. He further argues that the VA failed to assist him by not seeking and obtaining records from the U.S. Postal Service showing that he had, in fact, missed 800 hours of work. Appellant's Br. at 11–13.

Under the regulations governing VA's duty to assist:

(b) When information sufficient to identify and locate necessary evidence is of record, the Department of Veterans Affairs shall assist a claimant by requesting, directly from the source, existing evidence which is either in the custody of military authorities or maintained by another Federal Agency. . . .

(c) Should its efforts to obtain evidence prove unsuccessful for any reason which the claimant could rectify, the Department of Veterans Affairs shall so notify the claimant and advise him or her that the ultimate responsibility for furnishing evidence rests with the claimant.

38 C.F.R. § 3.159(b),(c); *see also* 38 U.S.C. §§ 5106, 5107; *White v. Derwinski*, 1 Vet. App. 519 (1991).

The Secretary relies on the novel argument that the U.S. Postal Service is an independent establishment of the executive branch and, since it operates in a "business-like fashion, similar to other self-sustaining commercial ventures" the records in their possession cannot be deemed to be "in the possession of the Federal Government" for purposes of the regulation. Secretary's Br. at 8 (citing *Counts v. Brown*, 6 Vet.App. 473, 478 (1994)).

There is no evidence in the record that VA ever attempted to secure the appellant's employment records and no evidence that VA ever notified the appellant that he had the ultimate responsibility of furnishing the records. Whether or not the Postal Service is a federal agency as contemplated by 38 C.F.R. § 3.159(b) is beside the point. Employment records, particularly those relating to lost time or sick leave, are generally highly confidential in nature and not releasable to anyone other than the employee without his written and specific release. Any argument or suggestion that VA could have or should have simply obtained these records, unilaterally, is misplaced. Having now recognized the possible importance of these records, it is unfortunate that the appellant, who could have obtained the records easier than the Secretary, did not do so. While there is certainly a duty to assist, such a duty does not relieve a claimant entirely from assisting himself. *See Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991) ("The duty to assist is not always a one-way street"). However, if VA could not or would not request the records, it

had, at a minimum, an obligation to advise the appellant of their relevance to his claim. 38 C.F.R. § 3.159(c); 38 U.S.C. § 5103(a); *Robinette v. Brown*, 8 Vet.App. 69, 80 (1995) (Secretary has obligation to inform claimant what evidence is required to complete his claim). It did not. Therefore, a remand is required. *See Lehman v. Derwinski*, 1 Vet. App. 339 (1991).

### III. CONCLUSION

For the foregoing reasons, the Court VACATES the July 1995 decision of the Board and REMANDS the matter for further adjudication. On remand, the appellant may submit additional evidence and argument to support his claim. *Quarles v. Derwinski*, 3 Vet. App. 129, 141 (1992).