Citation Nr: 1138403 
Decision Date: 10/14/11 Archive Date: 10/19/11

DOCKET NO. 09-32 083 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Entitlement to an increased disability rating for a cervical spine condition, currently evaluated 10 percent disabling.

2. Entitlement to an increased disability rating for limitation of motion of the right knee, currently evaluated 10 percent disabling for decreased flexion. 

3. Entitlement to a separate evaluation for recurrent subluxation or lateral instability of the right knee.

4. Entitlement to an increased disability rating for a left knee condition, currently evaluated 10 percent disabling for limited flexion.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J.A. Flynn, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from November 1970 to February 1974, and from September 1988 to December 1997.

This case comes before the Board of Veterans' Appeals (Board) on appeal from an April 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska, which, inter alia, continued the rating of the Veteran's mechanical cervical spine muscle strain at 10 percent disabling, continued the rating of the Veteran's musculoligamentous strain of the right knee at 10 percent disabling, and continued the rating of the Veteran's musculoligamentous strain of the left knee at 10 percent disabling. 

The issue of entitlement to an increased rating of the Veteran's left knee condition is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, D.C.


FINDINGS OF FACT

1. The Veteran's service-connected cervical spine condition is manifested by forward flexion limited to 40 degrees and a combined range of motion of 275 degrees; there is no objective evidence of neurological defects, incoordination, weakness, lack of endurance, ankylosis, or incapacitating episodes.

2. The Veteran's service-connected right knee condition is manifested by a range of motion limited to no worse than 95 degrees of flexion and 10 degrees of extension, with no clinical observation of recurrent subluxation, laxity, or instability.

3. The evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the Veteran's service-connected disabilities is inadequate. 


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of the currently-assigned 10 percent evaluation for a cervical spine condition have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5242, 5243 (2011).

2. The criteria for a disability rating in excess of the currently-assigned 10 percent evaluation for right knee limitation of flexion have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.71, Diagnostic Codes 5003, 5260 (2011).

3. The criteria for a disability rating of 10 percent, but no greater, for right knee limitation of extension have been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.71, Diagnostic Codes 5003, 5261 (2011).

4. The criteria for a separate compensable disability rating for right knee instability have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5257 (2011).

5. The criteria for referral of the Veteran's disabilities on an extra-schedular basis are not met. 38 C.F.R. § 3.321(b)(1) (2011).




REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA)

The Board has given consideration to the VCAA, which includes an enhanced duty on the part of VA to notify a veteran as to the information and evidence necessary to substantiate claims for VA benefits. See 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2010); 38 C.F.R. § 3.159 (2011). The VCAA also defines the obligations of VA with respect to its statutory duty to assist veterans in the development of their claims. See 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2010).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2011); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).
 
In addition, the notice requirements of the VCAA apply to all five elements of a service-connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. See id. at 486. In the instant case, correspondence dated March 2009 notified the Veteran of each of these elements. The Board therefore concludes that VCAA notice requirements have been satisfied with respect to the issue on appeal.

VA has done everything reasonably possible to assist the Veteran with respect to his claims for benefits in accordance with 38 U.S.C.A. § 5103A (West 2002) and 38 C.F.R. § 3.159(c) (2011). Service treatment records have been associated with the claims file. All identified and available treatment records have been secured, which for the relevant period of time include April 2009 VA examinations of the knees and spine, and VA and private treatment records.

The duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the veteran. See Green v. Derwinski, 1 Vet. App. 121 (1991). More specifically, a VA examination must be conducted when the evidence of record does not reflect the current state of the Veteran's disability. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2011). To that end, when VA undertakes to provide a VA examination, it must ensure that the examination is adequate. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

In the instant case, the Veteran was provided with a VA examination of his knees and spine in April 2009. The reports of the Veteran's April 2009 VA examinations indicate that in each instance the examiner reviewed the Veteran's claims file and past medical history, recorded his current complaints, conducted appropriate evaluations, and rendered appropriate diagnoses and opinions consistent with the remainder of the evidence of record. 

The Veteran indicated at his March 2011 personal hearing that the April 2009 VA examiner both failed to perform any range of motion testing on his cervical spine, and repetition of motion testing on his knees. The April 2009 VA examination reports of the Veteran's cervical spine and knees, however, contain limitation of motion findings, to include repetition of motion testing, all performed with a goniometer. The Board finds no reason to doubt that such testing indeed occurred, notwithstanding the Veteran's inability to recall such testing during his March 2011 hearing before the undersigned . The Board, therefore, concludes that these examination reports are adequate for the purpose of rendering a decision as to the Veteran's disabilities in the instant appeal. See 38 C.F.R. § 4.2 (2011); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Veteran additionally presented testimony before the undersigned Veterans Law Judge in March 2011, and a transcript of this testimony has been associated with the record. Thus, the duties to notify and assist have been met, and the Board will proceed to a decision.

Increased Rating Claims

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. See 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4 (2011). Separate rating codes identify the various disabilities. See 38 C.F.R. Part 4 (2011). When there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7 (2011). Any reasonable doubt regarding the degree of disability is resolved in favor of the veteran. See 38 C.F.R. § 4.3 (2011).

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). When the appeal arises from an initial assigned rating, consideration must be given to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. See Fenderson v. West, 12 Vet. App. 119 (1999). However, staged ratings are also appropriate in any increased-rating claim in which distinct time periods with different ratable symptoms can be identified. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

The assignment of a particular diagnostic code is "completely dependent on the facts of a particular case." Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual's relevant medical history, diagnosis, and demonstrated symptomatology. Any change in diagnostic code by a VA adjudicator must be specifically explained. See Pernorio v. Derwinski, 2 Vet. App. 625, 629 (1992).

Separate disabilities arising from a single disease entity are to be rated separately. See 38 C.F.R. § 4.25 (2011); see also Esteban v. Brown, 6 Vet. App. 259, 261 (1994). Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disabilities. See 38 C.F.R. § 4.14 (2011).

Disability of the musculoskeletal system is primarily the inability to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. See 38 C.F.R. § 4.40 (2011). When making a rating determination, VA must consider whether there is less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity, atrophy of disuse, instability of station, or interference with standing, sitting, or weight bearing. See 38 C.F.R. § 4.45 (2011); Johnson v. Brown, 9 Vet. App. 7, 10 (1996); DeLuca v. Brown, 8 Vet. App. 202 (1995).

In general, after the evidence has been assembled, it is the Board's responsibility to evaluate the entire record. See 38 U.S.C.A. § 7104(a) (West 2002). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the Board resolves the benefit of the doubt for each such issue in favor of the claimant. See 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. §§ 3.102, 4.3 (2011).

In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the United States Court of Appeals for Veterans Claims (Court) stated that "a veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." To deny a claim on its merits, the preponderance of the evidence must be against the claim. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996) (citing Gilbert, 1 Vet. App. at 54).

Increased Rating for Cervical Spine Condition

The Veteran essentially contends that his cervical spine condition is more disabling than the current 10 percent evaluation.

Spine disabilities are evaluated under either the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever results in the higher evaluation when all disabilities are combined. See 38 C.F.R. § 4.71a, Diagnostic Code 5243 (2011). The Board has evaluated the Veteran's spine disorder under multiple diagnostic codes to determine if there is any basis to increase the assigned rating. Such evaluations involve consideration of the level of impairment of the veteran's ability to engage in ordinary activities, including employment, as well as an assessment of the effect of pain on those activities. See 38 C.F.R. §§ 4.10, 4.40, 4.45, 4.59 (2011).

The General Rating Formula for Diseases and Injuries of the Spine, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease rates disabilities as follows:

100 percent: Unfavorable ankylosis of the entire spine.

50 percent: Unfavorable ankylosis of the entire thoracolumbar spine.

40 percent: Unfavorable ankylosis of the entire cervical spine, or forward flexion of the thoracolumbar spine to 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine.

30 percent: Forward flexion of the cervical spine to 15 degrees or less, or favorable ankylosis of the entire cervical spine.

20 percent: Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, or forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees, or the combined range of motion of the thoracolumbar spine not greater than 120 degrees, or the combined range of motion of the cervical spine not greater than 170 degrees, or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis.

10 percent: Forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees, or forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees, or combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees, or combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees, or muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour, or vertebral body fracture with loss of 50 percent or more of the height.

38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine (2011).

The following ratings apply to intervertebral disc syndrome based on incapacitating episodes:

60 percent: Incapacitating episodes having a total duration of at least 6 weeks during the past 12 months.

40 percent: Incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months.

20 percent: Incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months.

10 percent: Incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months.

38 C.F.R. § 4.71a, Diagnostic Code 5243 (2011).

An "incapacitating episode" is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. See 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note 1 (2011).

For VA compensation purposes, a normal range of motion for the cervical spine is: forward flexion of zero to 45 degrees, extension of zero to 45 degrees, left and right lateral flexion of zero to 45 degrees, and left and right lateral rotation of zero to 80 degrees. The normal combined range of motion of the cervical spine (the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation) is 340 degrees. Normal ranges of motion for each component of spinal motion provided are the maximum usable for calculating the combined range of motion. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note 2 (2011); see also 38 C.F.R. § 4.71a, Plate V (2011).

When evaluating diseases and injuries of the spine, any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, should be evaluated separately, under an appropriate diagnostic code. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (1) (2011).

In the instant case, the Veteran underwent a VA examination of his cervical spine in April 2009. During that examination, the Veteran reported a history of fatigue, decreased motion, stiffness, weakness, and daily non-radiating pain in the posterior neck. This pain, which the Veteran characterized as of mild to moderate severity, occurred daily and was usually dull but occasionally sharp. The Veteran reported that flare-ups of pain occurred with weather changes and sitting, and the flare-ups were typically of a few days duration. The Veteran reported no incapacitating episodes of spine disease or hospitalizations, he used no devices or aids, and could walk one-half mile.

Upon physical examination, the examiner noted that the Veteran's posture, head position, and gait were normal. The Veteran's spine was symmetrical. The examiner found no gibbus, kyphosis, list, lumbar flattening, lumbar lordosis, scoliosis, reverse lordosis, cervical spine ankylosis, or thoracolumbar spine ankylosis. 

Upon range of motion testing with a goniometer, the Veteran had forward flexion to 40 degrees, extension to 35 degrees, lateral flexion to 25 degrees in both directions, and lateral rotation to 75 degrees in both directions. The Veteran experienced mild discomfort over the posterior lower cervical spine while performing this range of motion testing. Upon three repetitions of the range of motion testing, the Veteran experienced mild pain, weakness and fatigue, but no incoordination. The examiner could not determine likely additional limitation of motion following repetitive use during flare-ups without resorting to speculation, but the examiner noted that the Veteran had no additional limitation following repetitive testing. The examiner found no radiculopathy or distribution of symptoms, and pulses and sensation were intact in both upper extremities.

The examiner noted that the Veteran's cervical spine condition had no effects on his ability to perform chores, shopping, traveling, feeding, bathing, dressing, toileting, or grooming. The cervical spine condition had a mild effect on his ability to engage in recreation, and a moderate effect on his ability to engage in exercise and sports.

In addition to the results of the above VA examination, the Veteran presented testimony before the undersigned at a March 2011 hearing. At that time, the Veteran indicated that his neck "swells up" and he loses range of motion as a result. The Veteran further indicated that his condition had been the same for several years.

As noted above, the Veteran is currently in receipt of a 10 percent rating for his cervical spine condition. Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a higher rating of 20 percent is warranted when the evidence reveals incapacitating episodes having a total duration of at least two weeks but fewer than four weeks during the past 12 months. See 38 C.F.R. § 4.71(a), Diagnostic Code 5243 (2011). The Veteran denied any incapacitating episodes or hospitalizations during his April 2009 examination. Similarly, VA and private treatment records do not show that the Veteran experienced any incapacitating episodes or was hospitalized for this service-connected neck disability during the course of the appeal. Accordingly, the Veteran is not entitled to a rating higher based upon incapacitating episodes. As the Veteran is not entitled to an increased rating based on incapacitating episodes, it is necessary to next determine whether he is entitled to a higher rating based on the orthopedic or neurological manifestations of his cervical spine disability.

Turning first to orthopedic manifestations of the Veteran's cervical spine disability, the Board notes that a 100 percent rating under the General Rating Formula for Diseases and Injuries of the Spine requires unfavorable ankylosis of the entire spine, and a 40 percent rating requires unfavorable ankylosis of the entire cervical spine. "Ankylosis" is immobility and consolidation of a joint due to a disease, injury, or surgical procedure. See Lewis v. Derwinski, 3 Vet. App. 259 (1992) (citing Saunders Encyclopedia and Dictionary of Medicine, Nursing, and Allied Medicine at 68 (4th ed. 1987)). The Veteran's April 2009 examination does not indicate the presence of ankylosis of any part of the spine. On the contrary, the record shows that the Veteran has maintained limited motion throughout the course of the appeal. As such, neither a 40 percent nor a 100 percent disability rating of the Veteran's cervical spine is warranted under the General Rating Formula for Diseases and Injuries of the Spine. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine (2011). The Veteran has forward flexion of the cervical spine of 40 degrees, and a combined range of motion of the cervical spine of 275 degrees. Therefore, neither a 30 percent evaluation nor a 20 percent evaluation of the Veteran's cervical spine disability is appropriate.

Additionally, the Board must consider functional loss due to pain and weakness that causes additional disability beyond that which is reflected on range of motion measurements. See 38 C.F.R. § 4.40 (2011); DeLuca v. Brown, 8 Vet. App. 202 (1995). The Board must consider the effects of weakened movement, excess fatigability and incoordination. 38 C.F.R. § 4.45 (2011). The report of the Veteran's April 2009 VA examination found no additional loss of range of motion during flare-ups or secondary to repetitive use of the joint, painful motion, weakness, excessive fatigability, lack of endurance, or incoordination. While the Board accepts the Veteran's contention that his cervical spine disability causes him to experience pain, stiffness, and weakness, the Board has taken this into account in its above discussion of the range of motion of the Veteran's back. The rating schedule does not require a separate rating for pain itself. See Spurgeon v. Brown, 10 Vet. App. 194 (1997). Furthermore, even when the Veteran's complaints of pain, stiffness, and weakness are considered, the manifestations of his service connected cervical spine disability do not more closely approximate the criteria applicable for a higher rating. Accordingly, a higher evaluation based on functional loss due to pain and weakness is not warranted.

Turning next to neurological manifestations, neurological abnormalities associated with diseases and injuries of the spine are to be rated separately. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note 1 (2011). In the instant case, however, the Veteran has not complained of any neurological impairment associated with his cervical spine disability, nor was any found during his April 2009 VA examination, nor was any such impairment indicated in post service treatment records. A separate rating for neurological abnormalities associated with the Veteran's cervical spine condition is therefore unwarranted.

The Board further finds that there have been no distinct periods during the relevant time period in which the Veteran's cervical spine disability was more than 10 percent disabling. He is accordingly not entitled to receive a "staged" rating. See Hart, supra. As the preponderance of the evidence is against the claim for an increased rating, the benefit-of-the-doubt rule does not apply, and the claim for an increased rating greater than 10 percent must be denied. See 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Increased Rating for Right Knee Condition Based on Limitation of Motion

The Veteran essentially contends that his right knee condition is more disabling than the current 10 percent evaluation assigned for limitation of flexion.

Arthritis of a major joint is to be rated under the criteria for limitation of motion of the affected joint. See 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2011). For the purpose of rating disabilities due to arthritis, the knee is considered a major joint. See 38 C.F.R. § 4.45 (2011). When limitation of motion of the joint is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application. See 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2011). Range of motion measurements are rounded to the nearest five degrees. See 38 C.F.R. § 4.71a, Note (4).

VA's General Counsel has also determined that separate evaluations may be assigned for limitation of flexion and extension of the same joint. VAOPGCPREC 09-2004 (September 17, 2004). Specifically, when a Veteran has both a compensable level of limitation of flexion and a compensable level of limitation of extension of the same leg, the limitations must be rated separately to adequately compensate for functional loss associated with injury to the leg. Id.

The limitation of motion in the Veteran's right knee has been previously evaluated under Diagnostic Code 5260 for limitation of flexion. Limitation of flexion of the knee is rated as follows: flexion limited to 60 degrees warrants a noncompensable rating; flexion limited to 45 degrees warrants a 10 percent rating; flexion limited to 30 degrees warrants a 20 percent rating, and flexion limited to 15 degrees warrants a 30 percent rating. See 38 C.F.R. § 4.71a, Diagnostic Code 5260 (2011). 

Related to limitation of flexion is limitation of extension. Limitation of extension of the knee is rated as follows: extension limited to five degrees warrants a noncompensable rating, extension limited to 10 degrees warrants a 10 percent rating, extension limited to 15 degrees warrants a 20 percent rating, extension limited to 20 degrees warrants a 30 percent rating, extension limited to 30 degrees warrants a 40 percent rating, and extension limited to 45 degrees warrants a 50 percent rating. See 38 C.F.R. § 4.71a, Diagnostic Code 5261 (2011).

VA standards describe normal range of motion of the knee as from 0 to 140 degrees. See 38 C.F.R. § 4.71, Plate II (2011).

The Board has considered the applicability of additional diagnostic codes potentially applicable to the Veteran's service-connected right knee disability. However, no higher or separate evaluation is warranted under any of these diagnostic codes. In this regard, the Board observes that Diagnostic Codes 5258 and 5259 do not apply to the Veteran's current disability because there is no evidence of semilunar dislocated cartilage or removal of the semilunar cartilage. In addition, as the evidence of record fails to demonstrate ankylosis or impairment of the tibia or fibula, the Veteran is not entitled to a separate or higher rating under Diagnostic Codes 5256 or 5262.

Upon review of the medical evidence of record, the Board notes that in March 2009, the Veteran complained of knee pain at a VA Medical Center. The Veteran indicated that flexing his knee past 90 degrees caused him marked pain, and he reported difficulty getting up from a kneeling position. The Veteran denied swelling or instability. Upon physical examination, the Veteran had 90 degrees of flexion in both knees and extension to zero degrees in both knees. The clinician noted crepitation with flexion and extension. 

The Veteran was afforded with a VA examination of his right knee in April 2009. The examiner noted no constitutional symptoms of arthritis or incapacitating episodes, and the Veteran had no limitations on standing or sitting. The Veteran reported an ability to walk one half-mile without assistive devices. The Veteran reported that pain in his knees was constant, and he reported that only his left knee locked infrequently. The Veteran reported falling occasionally. 

Upon physical examination, the examiner noted that the Veteran's gait was normal, and found no evidence of abnormal weight bearing, loss of bone, inflammatory arthritis, joint ankylosis, or instability. The examiner noted that the Veteran's knee condition had no effects on his ability to perform chores, shopping, traveling, feeding, bathing, dressing, toileting, or grooming. The knee condition had a moderate effect on his ability to engage in exercise, sports, and recreation.

Upon range of motion testing with a goniometer, the Veteran had extension to zero degrees and flexion to 95 degrees in both knees. The examiner noted no ligamentous laxity, and minimal crepitus was noted. Upon three additional repetitions, the Veteran experienced moderate pain, mild to moderate weakness and fatigue, but no incoordination. The Veteran had extension upon repetition to 8 degrees limited by pain, but full flexion. The examiner could not determine additional limitation following repetitive use during flare-ups without resorting to speculation, but the examiner noted that the Veteran did not have additional limitation following repetitive use at the time of the examination.

The Veteran also provided records from a private orthopedic center regarding a partial knee replacement that the Veteran underwent in October 2010. A September 2010 record indicated that the Veteran had difficulties with walking, stiffness, stairs, locking, and sleeping. The Veteran did not require a cane or walker. The Veteran was unable to walk more than the length of one block comfortably. The Veteran took anti-inflammatory drugs and had three cortisone injections the preceding year. The Veteran's gait was normal. The Veteran had extension to 10 degrees and flexion to 133 degrees with mild medial joint line pain. The right knee had no patellofemoral pain or instability.

In addition to the medical evidence of record, the Board has considered the Veteran's lay assertions regarding his knee condition. The Veteran reported an ability to walk one to two miles at a moderate pace, sometimes experiencing pain afterwards. The Veteran described generally the pain that his knees cause him to experience.

Applying the pertinent regulations to the facts in the instant case, at worst, the Veteran's range of motion in his right knee is limited to 95 degrees of flexion. At no time during the course of the appeal has the Veteran's right knee flexion been limited to 30 degrees or less as contemplated by a higher rating. Accordingly, the limitation of knee flexion does not warrant an evaluation in excess of the current 10 percent rating for the right knee. See 38 C.F.R. § 4.71a, Diagnostic Codes 5260 (2011).

With regard to knee extension, at worst, the Veteran's range of motion is limited to 10 degrees of extension in his right knee. At no time during the course of the appeal has right knee extension been limited to 15 degrees or more as contemplated by a higher rating based on limitation of extension. Accordingly, the limitation of knee extension does not warrant an evaluation in excess of the 10 percent rating for the right knee. See 38 C.F.R. § 4.71a, Diagnostic Codes 5260, 5261 (2011).

In finding that the Veteran does not meet the criteria for ratings in excess of 10 percent for limited right knee flexion and extension, the Board must consider functional loss due to pain and weakness that causes additional disability beyond that which is reflected on range of motion measurements. See 38 C.F.R. § 4.40 (2011); DeLuca v. Brown, 8 Vet. App. 202 (1995). The Board must consider the effects of weakened movement, excess fatigability and incoordination. 38 C.F.R. § 4.45 (2011). While the VA examiner noted moderate pain, mild to moderate weakness, and fatigue on repetitive use, this limitation, as discussed above, does not warrant a higher evaluation than that applicable to the ranges of motion discussed above. While the Board accepts the Veteran's contention that his right knee disability causes him to experience significant pain, the Board has taken this into account in its above discussion of the range of motion of the Veteran's knee. The rating schedule does not require a separate rating for pain itself. Spurgeon v. Brown, 10 Vet. App. 194 (1997). Thus, a higher evaluation based on functional loss due to pain is not warranted.

As noted above, when x-ray evidence of degenerative arthritis is presented but the loss of range of motion is noncompensable, a 10 percent disability rating is warranted under Diagnostic Code 5003. See 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2011). This Diagnostic Code also provides that in the absence of limitation of motion, a 20 percent evaluation will be assigned where there is x-ray evidence of involvement of two or more major joints or two or more minor joint groups and there are occasional incapacitating exacerbations. See 38 C.F.R. 4.71a, Diagnostic Code 5003. A 10 percent disability rating is assigned if there are no incapacitating exacerbations. In the instant case, the Veteran is already being compensated for painful limited flexion and a separate 10 percent rating is being awarded for limitation of extension. Accordingly, a separate compensable rating is not warranted under Diagnostic Code 5003. See 38 C.F.R. § 4.71a, Note (1) (indicating that the 20 percent and 10 percent ratings based on x-ray findings will not be combined with ratings based on limitation of motion). 

For the above reasons, a rating in excess of 10 percent for impaired flexion of the right knee is not warranted. However, a separate compensable rating of 10 percent is warranted for impaired extension of the Veteran's right knee. The Board further finds that there have been no distinct periods during the relevant time period in which the Veteran's knee range of motion was more or less than stated above. He is accordingly not entitled to receive a "staged" rating. See Hart, supra.

Increased Rating for Right Knee Condition Based on Instability

The Veteran contends that his service-connected right knee disability is entitled to a compensable evaluation for instability.

As noted above, separate disabilities arising from a single disease entity are to be rated separately. See 38 C.F.R. § 4.25 (2011); see also Esteban v. Brown, 6 Vet. App. 259, 261 (1994). More specifically, however, VA General Counsel has concluded that a veteran who has arthritis and instability of a knee may be rated separately under Diagnostic Codes 5003 and 5257 and that evaluation of knee dysfunction under both codes does not amount to pyramiding under 38 C.F.R. § 4.14. See VAOPGCPREC 23-97 (July 1, 1997) and VAOPGCPREC 09-98 (August 14, 1998). Therefore, a veteran who has both arthritis and instability of the knee may be rated separately, provided that any separate rating must be based upon additional disability. See also Degmetich v. Brown, 104 F.3d 1328, 1331 (Fed. Cir. 1997).

Diagnostic Code 5257 is the pertinent diagnostic code for knee instability. Recurrent subluxation or lateral instability is rated 10 percent when slight, 20 percent when moderate, and 30 percent when severe. See 38 C.F.R. § 4.71a, Diagnostic Code 5257 (2011).

The words "slight," "moderate," and "severe" are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence, to the end that its decisions are equitable and just. See 38 C.F.R. § 4.6 (2011). It should also be noted that clinicians' use of terminology such as "severe," although an element that the Board will consider, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. See 38 C.F.R. §§ 4.2, 4.6 (2011).

In the instant case, upon VA examination in April 2009, the examiner found no ligamentous laxity or crepitus. The examiner concluded that the Veteran had no knee instability. Similarly, a March 2009 VA treatment record indicated that the Veteran experienced no swelling in the knees. The clinician noted that the Veteran had no knee instability, and stated that all of the Veteran's ligaments had good endpoints. A private treatment record from September 2, 2010 noted that the Veteran had no instability in his right knee. 

At the March 2011 hearing before the undersigned, the Veteran described his knee instability, and he indicated that he almost fell from a roof due to such instability. He further described that he had fallen down steps after his "knees gave out." He alternatively described this instability as existing in both knees, or that it was "hard to recall" whether the instability affected one knee or the other. The Veteran reported that he did not wear a knee brace on either knee.

The Board finds that a separate evaluation for knee instability is not warranted. The Board acknowledges that the Veteran is competent to attest to experiencing instability in his knee. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional). The Board also notes, however, despite the Veteran's claims at his March 2011 hearing of possibly experiencing right knee instability, there is an absence of any complaint of right knee instability to medical professionals, and the consistent findings of clinicians that the Veteran had no instability in his right knee. Given the Veteran's own conflicting report of instability at his March 2011 hearing and the absence of complaint to medical care providers of such instability, the Board places greater weight on the clinical evidence and finds that a separate evaluation for right knee instability is not warranted.

With regard to the DeLuca factors discussed above, the Board notes that when a diagnostic code is not predicated on a limited range of motion alone, the provisions of 38 C.F.R. §§ 4.40 and 4.45 do not apply. See Johnson v. Brown, 9 Vet. App. 7, 11 (1996). 

As the preponderance of the evidence is against the claim for an increased rating, the benefit-of-the-doubt rule does not apply, and the claim for a separate rating for instability of the right knee is denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Extra-Schedular Considerations

In addition, the Board has considered whether the Veteran is entitled to a greater level of compensation on an extra-schedular basis. Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors that render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993).

In Thun v. Peake, the Court set forth a three-step inquiry to determine a veteran's entitlement to an extra-schedular rating. See 22 Vet. App. 111 (2008). First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found to be inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating.

In this case, it is not necessary to go any further than the first step of the Thun analysis. The rating criteria are not inadequate. Higher ratings are available for the Veteran's cervical spine condition, limitation of motion of the knees, and instability of the knees, but the Veteran does not meet those criteria. 

It does not appear that the Veteran has an "exceptional or unusual" disability; he merely disagrees with the assigned evaluation for his level of impairment. In other words, he does not have any symptoms from his service-connected disorder that are unusual or are different from those contemplated by the schedular criteria. The available schedular evaluations for that service-connected disability are adequate. Referral for extra-schedular consideration is not warranted. See VAOPGCPREC 6-96. Further inquiry into extra-schedular consideration is moot. See Thun, supra.

The Board also notes that the Court has held that the issue of a total disability rating based on individual unemployability (TDIU) is part of an increased rating claim when a request for TDIU is reasonably raised by the record. Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). However, in the present case, the Veteran has not explicitly raised the issue of TDIU. Likewise, the record does not reasonably raise the issue of TDIU. The Veteran reported at his March 2011 hearing before the undersigned that he was employed in the information technology field. Additionally, the Veteran was employed full-time at the time of his April 2009 VA examination. In light of the foregoing, the Board finds that entitlement to TDIU has not been raised.


ORDER

A disability rating in excess of 10 percent for a cervical spine condition is denied.

A disability rating in excess of 10 percent for limitation of flexion of the right knee is denied.

A disability rating of 10 percent for limitation of extension of the right knee is granted, subject to controlling regulations applicable to the payment of monetary benefits.

A separate evaluation for recurrent subluxation or lateral instability of the right knee is denied.
REMAND

The Veteran seeks entitlement to a higher disability rating for his service-connected left knee disability, which is currently evaluated as 10 percent disabling. After having carefully considered the matter, and for reasons expressed immediately below, the Board finds that the claim on appeal must be remanded for further evidentiary development. 

VA's duty to assist includes a duty to provide a medical examination or obtain a medical opinion only when it is necessary to make a decision on the claim. See 38 U.S.C.A. § 5103A(d) (West 2002); 38 C.F.R. § 3.159(c)(4) (2010); see also Robinette v. Brown, 8 Vet. App. 69, 76 (1995). When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

The present level of disability is of primary concern when entitlement to compensation has already been established and an increase in the disability rating is at issue. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). VA's duty to assist includes providing a new medical examination when a Veteran asserts or provides evidence that a disability has worsened and the available evidence is too old for an adequate evaluation of the current condition. See Weggenmann v. Brown, 5 Vet. App. 281, 284 (1993); see also Caffrey v. Brown, 6 Vet. App. 377, 381 (1994) (finding that the Board should have ordered a contemporaneous examination of the veteran because a 23-month old exam was too remote in time to adequately support the decision in an appeal for an increased rating).

In the instant case, the Veteran received a unicompartmental left knee replacement on October 13, 2010. A December 2010 rating decision of the VA RO granted the Veteran a temporary total disability evaluation of 100 percent effective October 13, 2010 for surgical treatment requiring convalescence. The December 2010 rating decision also assigned an evaluation of 10 percent from December 1, 2010, the first day of the month following a one-month convalescence period. The only medical evidence of record following the Veteran's left knee replacement surgery is from this period of convalescence in November 2010, when the Veteran's left knee was observed to be stable. There is no medical evidence of record regarding the severity of the Veteran's left knee disability from the period following his convalescence.

Given the necessity of ascertaining the Veteran's present level of disability, a contemporaneous examination of the Veteran's left knee disability is necessary.

Accordingly, the case is REMANDED for the following actions:

1. The RO must obtain all outstanding VA treatment records. All attempts to locate these records should be fully documented in the claims folder. If VA is unable to secure these records, the RO must notify the Veteran and (a) identify the specific records VA is unable to obtain; (b) briefly explain the efforts that VA made to obtain those records; (c) describe any further action to be taken by VA with respect to the claim; and (d) notify the Veteran that he is ultimately responsible for providing the evidence. See 38 U.S.C.A. § 5103A(b)(2) (West 2002); 38 C.F.R. § 3.159(e)(1) (2011).

2. The Veteran should be afforded a VA examination by an examiner with sufficient expertise to determine the nature and extent of all impairments due to his service-connected left knee disability. The claims folder must be made available to and reviewed by the examiner. All indicated studies, including x-ray and range of motion studies (measured in degrees), should be performed.

The examiner should describe in detail any current symptomatology associated with the Veteran's service connected left knee disability including, but not limited to, any skeletomuscular or neurological manifestations.

In reporting the results of range of motion testing, the examiner should identify any objective evidence of pain and the specific excursion(s) of motion, if any, accompanied by pain. To the extent possible, the examiner should assess the degree of severity of any pain.

Tests of joint motion against varying resistance should be performed. The extent of any pain, incoordination, weakened movement, and excess fatigability on use should be described. To the extent possible, the additional functional impairment due to pain, incoordination, weakened movement, and excess fatigability should be assessed in terms of the degree of additional range of motion loss. If this is not feasible, the examiner should so state and provide an explanation as to why it is not feasible.

The examiner should also express an opinion concerning whether there would be additional functional limitations on repeated use or during flare-ups (if the Veteran describes flare-ups). To the extent possible, the additional functional limitation on repeated use or during flare-ups should be assessed in terms of the degree of additional range of motion loss. If this is not feasible, the examiner should so state and provide an explanation as to why it is not feasible.

The examiner should indicate whether, and to what extent, the Veteran has any instability in the left knee.

Lastly, the examiner should provide an opinion concerning the impact of the Veteran's service-connected left knee disability on his ability to work.

The supporting rationale for all opinions expressed must be provided. If any requested opinion cannot be rendered, the examiner should provide a detailed rationale on why such could not be accomplished. 

3. The RO must notify the Veteran that it is his responsibility to report for any VA examination scheduled, and to cooperate in the development of the claim. The consequences for failure to report for a VA examination without good cause may include denial of the claim. See 38 C.F.R. §§ 3.158, 3.655 (2010). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable. Copies of all documentation notifying the Veteran of any scheduled VA examination must be placed in the Veteran's claims file.

4. Then, after ensuring any other necessary development has been completed, the RO or AMC should readjudicate the Veteran's claim. If action remains adverse to the Veteran, the RO or AMC must provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate opportunity to respond. Thereafter, the case should be returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matter that the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).




______________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs