﻿Citation Nr: 19159001
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 14-32 104
DATE: July 30, 2019

ORDER

For the period from July 1, 2013, an increased disability rating in excess of 30 percent for a service-connected right ankle disability is denied.

FINDING OF FACT

For the period from July 1, 2013, the Veteran’s service-connected right ankle disability manifested pain, dorsiflexion not more than 10 degrees, plantar flexion not more than 40 degrees, without evidence of malunion or nonunion of the tibia or fibula, ankylosis of the subastragalar or tarsal joints, malunion of the os calcis or astragalus, or an astragalectomy. 

CONCLUSION OF LAW

For the period from July 1, 2013, the criteria for the assignment of an increased disability rating in excess of 30 percent for the Veteran’s service-connected right ankle disability have not been met. 38 U.S.C. § 1155, 5107, 5110; 38 C.F.R. §§ 3.400, 4.1, 4.3, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Code 5270.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served honorably in the U.S. Army from August 1973 to August 1977. This matter comes before the Board of Veterans’ Appeals (Board) on appeal from October 2013 and July 2014 rating decision issued by a Department of Veterans Affairs (VA) Regional Office/Agency of Original Jurisdiction (AOJ), which awarded a 30 percent rating under Diagnostic Code 5270 for the Veteran’s service-connected right ankle disability, effective July 1, 2013. The Veteran’s Form 9 indicates that he did not request a Board hearing.

By way of history, a January 1978 rating decision awarded service connection for the Veteran’s right ankle disability, initially evaluated under Diagnostic Code 5271. The Veteran sought an increased evaluation, and a July 2013 rating decision continued the 10 percent evaluation under Diagnostic Code 5271. Within a year of that decision the Veteran filed a claim for a temporary total evaluation and increased rating and additional evidence was received. In a September 2013 rating decision the temporary total evaluation was granted for the period from May 17, 2013 until July 1, 2013 and a 10 percent evaluation was continued after July 1, 2013. The Veteran disagreed with that rating decision. 

During the pendency of the appeal, a July 2014 rating decision increased the right ankle to 20 percent disabling under Diagnostic Code 5271, from December 6, 2012 to May 16, 2013. In July 2014, in addition to the increased evaluation awarded under Diagnostic Code 5271, the RO also changed the Diagnostic Code for the period after the surgery and thus awarded a 30 percent evaluation under Diagnostic Code 5270, effective July 1, 2013. The Veteran perfected his appeal. In May 2018 the Board denied the claim for a disability rating higher than 20 percent under diagnostic code 5271 for the period prior to May 16, 2013 and remanded the Veteran’s appeal of the 30 percent evaluation under DC 5270 for the period beginning July 1, 2013, for further development, including the scheduling of an additional VA examination to determine the current manifestations and severity of the Veteran’s service-connected right ankle disability status post his May 2013 right ankle surgery. There is no indication that the Veteran appealed the Board decision, nor did the Veteran or his representative file a motion for reconsideration. See 38 C.F.R. §§ 20.1103, 20.200. Accordingly, the evaluation of the Veteran’s right ankle disability under Diagnostic Code 5271 prior to May 16, 2013, is not subject to adjudication as part of the instant appeal. In March 2019, the Veteran underwent the VA examination directed by the Board, and, after careful review, the Board has determined that substantial compliance with its May 2018 remand directives has been accomplished. See Stegall v. West, 11 Vet. App. 268, 271 (1998); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

For the entire period on appeal, an increased disability rating in excess of 30 percent for a service-connected right ankle disability is denied.

As stated above, a July 2014 rating decision assigned the Veteran a 30 percent rating under Diagnostic Code (DC) 5270 for his service-connected right ankle disability, from July 1, 2013, based upon evidence of ankylosis subsequent to the Veteran’s May 2013 right ankle surgery. The Veteran contends that his service-connected right ankle disability warrants a higher disability rating; however, for the reasons set forth below, the Board finds that a disability rating in excess of 30 percent is not warranted in this case. 

Disability evaluations are determined by the application of VA’s Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civil occupations. See 38 U.S.C. § 1115; 38 C.F.R. §§ 3.321(a), 4.1, 4.21. Disability evaluations are based upon the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life, including employment. See 38 C.F.R. § 4.10.

Separate diagnostic codes identify the various disabilities. See 38 C.F.R. § 4.27. VA has a duty to acknowledge and to consider all regulations that are potentially applicable to issues raised in the record and to explain the reasons and bases for its conclusions. See Schafrath v. Derwinski, 1 Vet. App. 589, 592-93 (1991). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. See 38 C.F.R. §§ 4.7, 4.21. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of the veteran’s disability, such doubt will be resolved in favor of the claimant. See 38 C.F.R. § 4.3.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is the primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In determining the severity of a disability, the Board is required to consider the potential application of various other VA regulations, regardless of whether they were raised by the Veteran, as well as the entire history of the Veteran’s disability. See 38 C.F.R. §§ 4.1, 4.2; see also Schafrath, 1 Vet. App. at 595. Separate evaluations may be assigned for separate periods of time, or staged, where factual findings show distinct time periods during which the Veteran’s disability exhibits symptoms that warrant the application of different ratings. See Fenderson v. West, 12 Vet. App. 119, 126-28 (1999); see also Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). However, the evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; separate ratings may be assigned for distinct disabilities resulting from the same injury only where the symptomatology for one condition is not duplicative or overlapping with the symptomatology of the other condition. See 38 C.F.R. § 4.14; see also Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. See 38 C.F.R. § 4.40. It is essential that the examination on which disability ratings are based adequately portray the anatomical damage and the functional loss with respect to all these elements. See id. The functional loss may be due to absence of part, or all, of the necessary bones, joints, and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the veteran undertaking the motion. See id. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. See id.

The evaluation of joint disabilities must involve the following factors: less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); weakened movement (due to muscle injury, disease, or injury of peripheral nerves, divided or lengthened tendons, etc.); excess fatigability; incoordination and impaired ability to execute skilled movements smoothly; and pain on movement, swelling, deformity, or atrophy of disuse. See 38 C.F.R. § 4.45. Instability of station, disturbance of locomotion, interference with sitting, standing, and weight-bearing must also be considered. See id. A rating based on painful motion of a joint may be appropriate regardless of whether the painful motion stemmed from joint or periarticular pathology. See Burton v. Shinseki, 25 Vet. App. 1, 4-5 (2011).

Functional loss caused by pain must be rated as though it were caused by another factor, such as deformity, atrophy, adhesions, or any of the other factors cited above. See Schafrath, 1 Vet. App. at 592. In rating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. See id.

Painful motion is an important factor of disability, and facial expressions such as wincing exhibited in the presence of pressure on or manipulation of the affected joints should be carefully noted and definitely related to the affected joints. See 38 C.F.R. § 4.59. Actually painful, unstable, or malaligned joints due to healed injury are at the very least entitled to the minimum compensable rating for the affected joint. See id. Crepitation within the joint structures or the soft tissues, such as the tendons or ligaments, should be noted carefully as points of contact which are diseased, and flexion elicits such manifestations. See id. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and non-weightbearing and, if possible, with the range of the opposite undamaged joint. See id. When adjudicating disabilities evaluated based upon limitation of motion, the provisions of 38 C.F.R. §§ 4.40 and 4.45 pertaining to functional impairment must be applied, and examinations must assess whether the disability at issue manifested weakened movement, excess fatigability, or incoordination. See DeLuca v. Brown, 8 Vet. App. 202, 205-07 (1995). Such inquiry should not be limited to muscles or nerves, and, if feasible, these determinations should be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, or incoordination. See id. 

In order to constitute functional loss, pain must affect some aspect of the normal working movements of the body, such as excursion, strength, speed, coordination and endurance. See Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011). Although pain may cause functional loss, pain itself does not constitute functional loss and is merely one factor to be considered when evaluating functional impairment. See id. However, 38 C.F.R. § 4.40 does not require a separate rating for pain, but rather provides guidance for determining ratings under other diagnostic codes assessing musculoskeletal function. See Spurgeon v. Brown, 10 Vet. App. 194, 196 (1997).

Once the evidence has been assembled in the record, it is the Board’s responsibility to evaluate the evidence. See 38 U.S.C. § 7104(a). The Board shall consider all competent lay and medical evidence of record, analyze the credibility and probative value of the evidence, and provide reasons for rejecting any favorable material evidence. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff’d per curiam, 78 F.3d 604 (Fed. Cir. 1996). In addressing lay evidence and determining its probative value, the Board must assess both its competency, a legal concept determining whether testimony may be heard and considered, and its credibility, a factual determination regarding its probative value. See Layno v. Brown, 6 Vet. App. 465, 469 (1994).

Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Board shall afford the claimant the benefit of the doubt, see 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3, and where the evidence is in relative equipoise, the claimant shall prevail. See Gilbert v. Derwinski, 1 Vet. App. 49, 53-54 (1990). The preponderance of the evidence must weigh against the claim in order to warrant its denial. See Alemany v. Brown, 9 Vet. App. 518, 519-20 (1996).

Diagnostic Codes (DC) 5262 and 5270 through 5274 set forth the relevant provisions for disabilities of the ankle. See 38 C.F.R. § 4.71a. 

DC 5262 provides that impairment of the tibia and fibula characterized by malunion with slight knee or ankle disability warrants a 10 percent evaluation, malunion with moderate knee or ankle disability warrants a 20 percent evaluation, and malunion with marked knee or ankle disability warrants a 30 percent rating. Impairment of the tibia and fibula manifested by nonunion with loose motion, requiring a brace, warrants a maximum 40 percent rating. See id.

DC 5270 governs ankylosis of the ankle and provides a 20 percent rating for ankylosis in plantar flexion, less than 30 degrees; a 30 percent rating for ankylosis in plantar flexion, between 30 degrees and 40 degrees, or in dorsiflexion, between 0 degrees and 10 degrees; and a 40 percent rating for ankylosis in plantar flexion at more than 40 degrees, or in dorsiflexion at more than 10 degrees, or with abduction, adduction, inversion or eversion deformity. See id.

DC 5271 governs limited motion of the ankle, providing respective ratings of 10 and 20 percent for moderate or marked limited motion of the ankle. See id.

DC 5272 governs ankylosis of the subastragalar or tarsal joint, providing a 10 percent rating for a good weight-bearing position, and a 20 percent rating for a poor weight-bearing position. See id.

DC 5273 governs the malunion of the os calcis or astragalus, providing a 10 percent rating for a moderate deformity, and a 20 percent rating for a marked deformity. See id.

DC 5274 provides a 20 percent rating for an astragalectomy. See id.

The assignment of a particular DC depends upon the facts of each particular case, and the Board is authorized to choose an appropriate DC that is supported by both the evidence of record and a sufficiently articulated rationale. See Butts v. Brown, 5 Vet. App. 532, 538-39 (1993). Moreover, service connection for a disability is not severed when the DC assigned to that disability is revised in order to more accurately reflect the veteran’s relevant medical history, diagnoses, and demonstrated symptomatology. See Read v. Shinseki, 651 F.3d 1296, 1302 (Fed. Cir. 2011).

In this case, the Veteran’s service-connected right ankle disability has been assigned a 30 percent disability rating under DC 5270 from July 1, 2013. As stated above, the Veteran contends that his service-connected right ankle disability warrants an increased evaluation; however, for the reasons set forth below, the Board finds that a disability rating in excess of 30 percent is not warranted in this case. 

After careful review, and as set forth below, the Board finds that for the period on appeal from July 1, 2013, the evidence of record demonstrates that the Veteran’s service-connected right ankle disability does not manifest ankylosis in plantar flexion at more than 40 degrees, or in dorsiflexion at more than 10 degrees, or with an abduction, adduction, inversion, or eversion deformity (DC 5270), nor does the evidence of record reflect an impairment of the tibia or fibula (DC 5262), ankylosis of the subastragalar or tarsal joint (DC 5272), malunion of the os calcis or astragalus (DC 5273), or an astragalectomy (DC 5274).

In July 2014, the Veteran was afforded a VA examination to evaluate his right ankle disability, diagnosed as degenerative joint disease (DJD), status post his May 2013 anterior tibial spur exostectomy and chondroplasty. The July 2014 VA examiner noted the Veteran’s reports of increased pain and loss of mobility over the prior 18 months, including an average pain level of 7 or 8 out of 10 which the Veteran reported begins as soon as he gets out of bed in the morning. The Veteran further reported that he cannot climb stairs, ride a bike, or kneel due to the incapacity of his right ankle to bend properly, and that he has been advised that his next treatment will involve fusion of the right ankle. Upon examination, the range of the motion for the Veteran’s right ankle was reported to be abnormal, as defined by plantar flexion of 10 degrees and dorsiflexion of 0 degrees, with no change upon painful motion or repetitive-use testing. The examiner also noted the following manifestations of the Veteran’s right ankle disability: less movement than usual; weakened movement; pain on movement; swelling; disturbance of locomotion; and limpness. Abnormal muscle strength testing was also reported as follows: (a) right plantar flexion: active movement with gravity elimination (2/5); and (b) right dorsiflexion: palpable or visible muscle contraction, but no joint movement (1/5). The July 2014 VA examiner further found the right ankle to be ankylosed, as manifested by plantar flexion less than 30 degrees and dorsiflexion between 0 degrees and 10 degrees. Functional impact was described as causing increased pain at work due to constant standing and walking. No objective evidence of crepitus or additional limitation of motion was noted after repetitive use testing, and the Veteran did not report suffering from any flareups.

In March 2019, the Veteran was afforded another VA examination, during which the Veteran’s diagnosis of DJD was again noted, as well as tears of the peroneus brevis tendon and interosseous and anterior tibiofibular ligaments. The March 2019 VA examiner indicated the Veteran’s reports of the following right ankle symptoms: fatigue; weakness; lack of endurance; incoordination; decreased range of motion to varying degrees; decreased ankle movement; numbness; tremendous pressure on the right ankle, feeling like it could explode; an altered gait, walking more on the right heel and instep to alleviate pain; and the inability to run, bike, hike, or walk uphill. The Veteran also reported his belief that his right ankle is worse now than prior to his May 2013 surgery, and that his physician has advised him he will require an ankle fusion or replacement in the future. The Veteran further reported treating his right ankle disability with nearly ten cortisone injections, ice, rest, and an oral steroid medication. Upon examination, the range of the motion for the Veteran’s right ankle was reported to be abnormal, as defined by plantar flexion of 10 degrees and dorsiflexion of 10 degrees with both active and passive motion, as well as contributing to functional loss by decreasing movement for ambulation. The March 2019 VA examiner also noted the following manifestations of the Veteran’s right ankle disability: pain on dorsiflexion and plantar flexion; objective evidence of localized tenderness or pain on palpation of the entire ankle, rated as 8 out of 10; pain with weight-bearing; objective evidence of pain with non-weight bearing; less movement than normal with decreased range of motion; weakened movement; disturbance of locomotion; interference with sitting; and interference with standing. The March 2019 VA examiner also indicated that due to the Veteran’s decreased range of motion and his DJD, it was more difficult for him to ambulate or to stand for longer periods of time, or to sit for short periods of time with his ankle or foot on the floor. Abnormal muscle strength testing was also reported for both right plantar flexion and dorsiflexion, as active movement against some resistance (4/5). The March 2019 VA examiner further found that the Veteran suffers from bilateral shin splints that do not impact range of motion but did not find evidence of muscle atrophy or ankylosis. The Veteran was noted to regularly use an ankle brace due to his DJD, and imaging reports from November 2012 and April 2014 were noted to indicate tendon and ligament tears as well as moderate degenerative changes in the right ankle. Functional impact was described as causing difficulty for the Veteran to ambulate or to stand for longer periods of time, as well as increased pain and pressure to the right ankle when sitting. No objective evidence of crepitus or additional limitation of motion was noted after repetitive use testing, and the Veteran did not report suffering from any flareups. 

As directed by the Board’s May 2018 Remand, the March 2019 VA examiner addressed the residuals from the Veteran’s May 2013 right ankle surgery, which were described as increased pain and decreased mobility causing the Veteran to walk on his right heel and instep. In addition, the VA examiner addressed the Veteran’s 2014 physical therapy private treatment records from Mercy Medical Center, which indicated only roughly 9 degrees of total movement between dorsiflexion and plantar flexion, noting that the Veteran’s range of motion has increased since 2014 to roughly 20 degrees of total movement between dorsiflexion and plantar flexion. 

In consideration of the foregoing evidence, including the consistent findings of right ankle plantar flexion of not more than 40 degrees and dorsiflexion not more than 10 degrees, the Board finds that during the entire period on appeal, the relevant evidence of record indicates that the Veteran’s service-connected right ankle disability manifested symptoms that more closely approximate the criteria for a disability rating of 30 percent under DC 5270, but do not more closely approximate the criteria for a disability rating of 40 percent under DC 5270 or any other relevant diagnostic code, as the record does contain any evidence of ankylosis in plantar flexion at more than 40 degrees, or in dorsiflexion at more than 10 degrees, or with abduction, adduction, inversion, or eversion deformity.

Accordingly, the Board concludes that the preponderance of evidence weighs against the Veteran’s claims of entitlement to a disability evaluation under DC 5270 in excess of 30 percent, because 30 percent is the maximum rating afforded to an ankle disability exhibiting ankylosis in plantar flexion at 40 degrees or less, or in dorsiflexion at 10 degrees or less. See 38 C.F.R. § 4.71a, DC 5270. 

Consideration has also been given to the potential application of the other diagnostic codes governing disabilities of the ankle; however, the Board finds no basis upon which to assign increased or additional ratings for the Veteran’s right ankle disability at any point during the period of appeal. See 38 C.F.R. § 4.71a; see Schafrath, 1 Vet. App. at 595. As stated above, the record contains no evidence of an impairment of the tibia or fibula (DC 5262), ankylosis of the subastragalar or tarsal joints (DC 5272), malunion of the os calcis or astragalus (DC 5273), or an astragalectomy (DC 5274). Furthermore, as noted above, the Veteran’s rating was changed from 5271 to 5270 to reflect the most current symptomatology and provide for the most favorable rating. Accordingly, the Board finds that no additional evaluations under separate disability ratings are warranted in this case.

The Veteran has not specifically raised any other issues, nor have any other issues been reasonably raised by the evidence of record. See Doucette v. Shulkin, 28 Vet. App. 366, 370 (2017).

(Continued on the next page)

 

Accordingly, and in light of the foregoing, the Board finds that for the entire period on appeal, a preponderance of the evidence of record weighs against a finding that the Veteran’s right ankle disability is entitled to a rating in excess of 30 percent; therefore, the benefit of the doubt doctrine does not apply in this case, and the Veteran’s increased rating claim must be denied. See Gilbert, 1 Vet. App. at 53-54.

 

H. SEESEL

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Hannah Marsdale, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.