﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/21 Archive Date: 03/31/21

DOCKET NO. 200129-58972
DATE: March 31, 2021

ORDER

An increased evaluation in excess of 10 percent under Diagnostic Code 5257 for the Veteran’s service-connected left knee disability, to include slight instability, is denied.

An increased evaluation of 20 percent under Diagnostic Code 5003-5260, but not greater, for the Veteran’s service-connected left knee disability, to include degenerative arthritis and painful motion is granted.

An increased evaluation in excess of 10 percent for the Veteran’s service-connected gastrointestinal disability, diagnosed as hiatal hernia and gastrointestinal reflux disease (GERD), is denied.

FINDINGS OF FACT

1. The Veteran’s service-connected left knee disability was productive of a disability that more nearly approximates slight instability, without evidence of ankylosis, removal of semilunar cartilage, impairment of the tibia and fibula, or genu recurvatum.

2. The Veteran’s service-connected left knee disability manifested arthritis, painful motion, forward flexion limited to 29 degrees after repetitive use and during flareups, without evidence of ankylosis, removal of semilunar cartilage, impairment of the tibia and fibula, or genu recurvatum. 

3. The Veteran’s service-connected gastrointestinal disability, diagnosed as hiatal hernia and gastrointestinal reflux disease (GERD) manifested gastritis, esophagitis, a small hiatal hernia, acid reflux, regurgitation, and sleep disturbance.

CONCLUSIONS OF LAW

1. The criteria for the assignment of an increased evaluation in excess of 10 percent under Diagnostic Code 5257, for the Veteran’s service-connected left knee disability have not been met. 38 U.S.C. § 1155, 5107, 5110; 38 C.F.R. §§ 3.400, 4.1, 4.3, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Code 5257.

2. The criteria for the assignment of an increased evaluation of 20 percent for the Veteran’s service-connected left knee disability, to include limitation of flexion and extension with painful motion, have been met. 38 U.S.C. § 1155, 5107, 5110; 38 C.F.R. §§ 3.400, 4.1, 4.3, 4.7, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, Diagnostic Codes 5003, 5260.

3. The criteria for the assignment of an increased evaluation in excess of 10 percent for the Veteran’s service-connected gastrointestinal disability, diagnosed as hiatal hernia and gastrointestinal reflux disease (GERD), have not been met. 38 U.S.C. § 1155, 5107, 5110; 38 C.F.R. §§ 3.400, 4.1, 4.3, 4.7, 4.14, 4.114, Diagnostic Code 7346.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Marine Corps from June 1972 to October 1974. The Board notes that the rating decision on appeal was issued by an Agency of Original Jurisdiction (AOJ) in January 2020. See 38 C.F.R. § 19.2(d) (2020). 

In his January 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the modernized review system under the Appeals Modernization Act (AMA) and selected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal. See 38 C.F.R. § 20.301 (2020).

Increased Ratings

Disability evaluations are determined by the application of VA’s Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civil occupations. See 38 U.S.C. § 1115; 38 C.F.R. §§ 3.321(a), 4.1, 4.21. Disability evaluations are based upon the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life, including employment. See 38 C.F.R. § 4.10.

Separate diagnostic codes identify the various disabilities. See 38 C.F.R. § 4.27. VA has a duty to acknowledge and to consider all regulations that are potentially applicable to issues raised in the record and to explain the reasons and bases for its conclusions. See Schafrath, 1 Vet. App. at 593. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. See 38 C.F.R. §§ 3.321(a), 4.1, 4.21.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. See 38 C.F.R. §§ 4.7, 4.21. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. See 38 C.F.R. § 4.3.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is the primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, regardless of whether they were raised by the Veteran, as well as the entire history of the Veteran’s disability. See 38 C.F.R. § 4.1, 4.2; Schafrath,1 Vet. App. at 595. Separate evaluations may be assigned for separate periods of time, or staged, where factual findings show distinct time periods during which the Veteran’s disability exhibits symptoms that warrant the application of different ratings. See Fenderson v. West, 12 Vet. App. 119, 126-28 (1999); see also Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

Additionally, the evaluation of the same disability under several Diagnostic Codes, known as pyramiding, must be avoided. See 38 C.F.R. § 4.14. Separate ratings may be assigned for distinct disabilities resulting from the same injury only where the symptomatology for one condition is not duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. See 38 C.F.R. § 4.40. It is essential that the examination upon which disability ratings are based adequately portray the anatomical damage and the functional loss with respect to all of these elements. See id. The functional loss may be due to absence of part, or all, of the necessary bones, joints, and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the veteran undertaking the motion. See id. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. See id.

The factors involved in evaluating and rating disabilities of the joints include the following: less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); weakened movement (due to muscle injury, disease, or injury of peripheral nerves, divided or lengthened tendons, etc.); excess fatigability; incoordination and impaired ability to execute skilled movements smoothly; or pain on movement, swelling, deformity, or atrophy of disuse. See 38 C.F.R. § 4.45. An evaluation based on painful motion of a joint may be appropriate regardless of whether the painful motion stemmed from joint or periarticular pathology. See Burton v. Shinseki, 25 Vet. App. 1, 4-5 (2011).

Functional loss caused by pain must be rated at the same level as if that functional loss were caused by some other factor that actually limited motion, such as deformity, atrophy, adhesions, or any of the other factors cited above. See Schafrath, 1 Vet. App. at 592. Consequently, in evaluating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. See id.

Where the veteran is diagnosed with any form of arthritis, painful motion is an important factor of disability, and facial expressions such as wincing exhibited in the presence of pressure on or manipulation of the affected joints, should be carefully noted and related to the affected joints. See 38 C.F.R. § 4.59. Actually painful, unstable, or malaligned joints due to healed injury are at the very least entitled to the minimum compensable rating for the affected joint. The intent of the rating schedule is to recognize painful motion with joint or particular pathology as productive of disability. See id. Crepitation within the joint structures or the soft tissues, such as the tendons or ligaments, should be noted carefully as points of contact which are diseased, and flexion elicits such manifestations. See id. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint. See id.

When adjudicating disabilities evaluated based upon limitation of motion, the provisions of 38 C.F.R. §§ 4.40 and 4.45 pertaining to functional impairment must be applied, and examinations must assess whether the disability at issue manifested weakened movement, excess fatigability, or incoordination. See DeLuca v. Brown, 8 Vet. App. 202, 205-07 (1995). Such inquiry was not to be limited to muscles or nerves, and, if feasible, these determinations were to be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, or incoordination. See id. 

Consideration of 38 C.F.R. § 4.59 is not limited to cases involving arthritis; thus, a rating based on painful motion of a joint may be appropriate regardless of whether the painful motion stemmed from joint or periarticular pathology. See Burton v. Shinseki, 25 Vet. App. 1, 4-5 (2011). However, pain must affect some aspect of the normal working movements of the body such as excursion, strength, speed, coordination and endurance in order to constitute functional loss. See Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011). Although pain may cause functional loss, pain itself does not constitute functional loss and is merely one factor to be considered when evaluating functional impairment. See id. However, 38 C.F.R. § 4.40 does not require a separate rating for pain, but rather provides guidance for determining ratings under other diagnostic codes assessing musculoskeletal function. See Spurgeon v. Brown, 10 Vet. App. 194, 196 (1997).

Once the evidence has been assembled in the record, it is the Board’s responsibility to evaluate and consider all lay and medical evidence of record, to analyze the credibility and probative value of the evidence, and to provide reasons for rejecting any material evidence favorable to the claimant. See 38 U.S.C. § 7104(a); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff’d per curiam, 78 F.3d 604 (Fed. Cir. 1996). In addressing lay evidence and determining its probative value, the Board must assess both its competency, a legal concept determining whether testimony may be heard and considered, and credibility, a factual determination regarding the probative value of the evidence. See Layno v. Brown, 6 Vet. App. 465, 469 (1994).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Board shall afford the claimant the benefit of the doubt. See 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3. Where the evidence is in relative equipoise, the claimant shall prevail; the preponderance of the evidence must weigh against the Veteran’s claim in order for it to be denied. See Gilbert v. Derwinski, 1 Vet. App. 49, 53-54 (1990); Alemany v. Brown, 9 Vet. App. 518, 519-20 (1996).

1. An evaluation in excess of 10 percent under Diagnostic Code 5257 for the Veteran’s service-connected left knee disability, to include slight instability, is denied.

2. An increased evaluation of 20 percent under Diagnostic Code 5003-5260, but not greater, for the Veteran’s service-connected left knee disability, to include degenerative arthritis and painful motion is granted.

In this case, service connection for chondromalacia patella of the left knee was initially granted in a January 2012 rating decision and a 10 percent evaluation was assigned effective June 28, 2000. The Veteran filed a claim for an increased evaluation in January 2016. A rating decision in June 2016 continued the 10 percent rating under Diagnostic Code 5014. An August 2016 rating decision recharacterized the disability and granted a separate evaluation for chondromalacia patella left knee with osteoarthritis and assigned a 10 percent under Diagnostic Code 5014-5257 effective January 11, 2016 and assigned a separate 10 percent rating for slight instability of the left knee associated with degenerative joint disease under diagnostic code 5014-5257 effective June 13, 2016. The Veteran filed a Notice of Disagreement and a Statement of the Case was issued in June 2017 and the Veteran perfected that appeal with a June 2017 form VA 9. Subsequently, the Veteran opted that claim into the RAMP system in May 2018 and selected the higher level review lane. The higher level review rating decision was issued in June 2018. This rating decision clarified that the Veteran was rated 10 percent for slight instability of the left knee under Diagnostic Code 5014-5257 and 10 percent for chondromalacia patella of the left knee under Diagnostic Code 5260. The Veteran did not appeal this rating decision and it is therefore final.

Subsequently, in October 2019, the Veteran filed another claim seeking an increased rating for the left knee. A January 2020 rating decision continued the two 10 percent ratings and the Veteran filed a timely Form 10182. 

The Veteran contends that, for the entire period on appeal, increased evaluations are warranted due to the severity of his service-connected left knee disability, and for the reasons set forth below, the Board in part agrees. 

Diagnostic Codes 5256 through 5263 set forth the relevant provisions for disabilities of the knee. See 38 C.F.R. § 4.71a. 

Diagnostic Code 5256 governs ankylosis of the knee and provides a 30 percent rating for knee ankylosis in a favorable angle in full extension, or in slight flexion between 0 degrees and 10 degrees. A 40 percent rating is provided for knee ankylosis in flexion between 10 and 20 degrees. A 50 percent rating is provided for knee ankylosis in flexion between 20 degrees and 45 degrees, and a 60 percent rating is provided for knee ankylosis that is extremely unfavorable, in flexion at an angle of 45 degrees or more. The Rating Schedule provides that the normal range of motion of the knee is from zero degrees of extension to 140 degrees of flexion. See 38 C.F.R. § 4.71, Plate II (2020)

Diagnostic Code 5257 governs other impairment of the knee, providing respective ratings of 10, 20, and 30 percent for slight, moderate, or severe recurrent subluxation or lateral instability of the knee. See 38 C.F.R. § 4.71a, Diagnostic Code 5257 (2020). Because the terms “slight,” “moderate,” and “severe” are not defined in the Rating Schedule, instead of applying a mechanical formula, the Board must evaluate all the evidence of record to ensure that its adjudication of an increased rating claim is equitable and just. See 38 C.F.R. § 4.6 (2020).

Diagnostic Code 5258 provides a maximum 20 percent rating for dislocated semilunar cartilage with frequent episodes of locking, pain, and effusion into the joint. See 38 C.F.R. § 4.71a, Diagnostic Code 5258 (2020).

Diagnostic Code 5259 provides a maximum 10 percent rating for removal of semilunar cartilage that is symptomatic. See 38 C.F.R. § 4.71a, Diagnostic Code 5259 (2020).

Diagnostic Code 5260 governs the limitation of leg flexion and provides a zero percent rating for flexion limited to 60 degrees, 10 percent for flexion limited to 45 degrees, 20 percent for flexion limited to 30 degrees, and a maximum 30 percent rating for flexion limited to 15 degrees. See 38 C.F.R. § 4.71a, Diagnostic Code 5260 (2020).

Diagnostic Code 5261 governs the limitation of leg extension and provides a zero percent rating for extension limited to 5 degrees, 10 percent for extension limited to 10 degrees, 20 percent for extension limited to 15 degrees, 30 percent for extension limited to 20 degrees, 40 percent for extension limited to 30 degrees, and a maximum 50 percent rating for extension limited to 45 degrees. See 38 C.F.R. § 4.71a, Diagnostic Code 5261 (2020).

Diagnostic Code 5262 provides that impairment of the tibia and fibula characterized by malunion with slight knee or ankle disability warrants a 10 percent evaluation, malunion with moderate knee or ankle disability warrants a 20 percent evaluation, and malunion with marked knee or ankle disability warrants a 30 percent rating. See id. Impairment of the tibia and fibula manifesting nonunion with loose motion and requiring a brace warrants a maximum 40 percent rating. See 38 C.F.R. § 4.71a, Diagnostic Code 5262 (2020). 

Diagnostic Code 5263 provides a maximum 10 percent rating for genu recurvatum that is acquired and traumatic and accompanied by objectively demonstrated weakness and insecurity in weight-bearing. See 38 C.F.R. § 4.71a, Diagnostic Code 5263 (2020). 

Diagnostic Code 5010 provides that traumatic arthritis established by x-ray findings is rated as degenerative arthritis. Diagnostic Code 5003 provides that Degenerative arthritis established by x-ray findings must be evaluated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved; however, where the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a 10 percent rating may be assigned for each such major joint or group of minor joints so affected. See 38 C.F.R. § 4.71a; Diagnostic Code 5003 (2020). Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. See id. In the absence of limitation of motion, x-ray evidence of arthritis involving two or more major or minor joint groups warrants a 10 percent rating, and two or more major or minor joint groups with occasional incapacitating exacerbations warrant a 20 percent rating. See id. The 10 percent and 20 percent ratings based on x-ray findings may not be combined with ratings based on limitation of motion. See 38 C.F.R. § 4.71a, Diagnostic Code 5003, Note 1 (2020). 

Unlisted disabilities requiring rating by analogy are coded with the first two numbers of the schedule provisions for the most closely related body part plus “99.” See 38 C.F.R. § 4.27 (2021). Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the assigned rating; the additional code is shown after the hyphen. See id. 

The assignment of a particular diagnostic code depends upon the facts of each particular case, and the Board is authorized to choose an appropriate diagnostic code that is supported by both the evidence of record and a sufficiently articulated rationale. See Butts v. Brown, 5 Vet. App. 532, 538-39 (1993). Moreover, service connection for a disability is not severed when the diagnostic code assigned to that disability is revised in order to more accurately reflect the veteran’s relevant medical history, diagnoses, and demonstrated symptomatology. See Read v. Shinseki, 651 F.3d 1296, 1302 (Fed. Cir. 2011).

Effective dates for disability ratings may be established up to one year prior to the date of an increased rating claim if, based upon all the evidence of record, it can be factually ascertained that an increase in the Veteran’s service-connected disability occurred during that year preceding the claim. See 38 U.S.C. § 5110(b)(3); C.F.R. § 3.400(o)(2). In this case, the Veteran filed the instant increased rating claim on October 2019; therefore, the Board has considered whether it was factually ascertainable that the Veteran’s service-connected left knee disability manifested symptoms warranting an increased evaluation as early as October 2018.

After careful review, the Board finds as follows: (1) a preponderance of the evidence of record weighs against an increased evaluation in excess of 10 percent under Diagnostic Code 5257 for the Veteran’s service-connected left knee disability, to include slight instability; and (2) an increased evaluation of 20 percent under Diagnostic Code 5003-5260, but not greater, for the Veteran’s service-connected left knee disability, to include degenerative arthritis and painful motion limited to 29 degrees of flexion, is warranted.

In November 2019, the Veteran underwent a VA left knee examination, which culminated in a report finding that the Veteran’s service-connected left knee disability, to include instability, degenerative arthritis, and residuals status post three total left knee replacements, manifested the following symptoms: chronic residuals consisting of severe painful motion or weakness; initial flexion limited to 95 degrees; initial extension limited to 0 degrees; no change in motion after 3 repetitions; flexion and extension limited to an estimated 29 degrees during flareups and as the functional limitation with pain, weakness, fatigability or incoordination with repeated use over a period of time; evidence of pain with weight bearing; evidence of pain with non-weight bearing; pain with both active and passive range of motion; objective evidence of localized tenderness or pain on palpation of the knee joint or associated soft tissue, include the patella and lateral aspect; objective evidence of crepitus; history of a meniscus condition, but no current symptoms; an antalgic gait due to repeated knee surgeries, obesity, back pain, and a history of gout; reduction in muscle strength, to include forward flexion (4/5); left knee scar (measured as 19.0 centimeters by 0.7 centimeters); x-rays documenting advanced arthritis, especially patellofemoral, and several millimeters of posterior displacement of the tibia on the stress view; and June 2018 x-rays documenting his orthopedic knee prosthesis in satisfactory alignment, as well as calcification of the soft tissues of the posterior knee joint appear as a flabella.

The November 2019 VA examination report further found as follows: (1) the Veteran’s limitation of motion itself contributes to functional loss, to include less movement than normal; pain noted upon exam on rest/non-movement, and both flexion and extension exhibiting pain; (2) pain significantly limits functional ability with repeated use over a period of time; (3) the Veteran reported daily left knee flare-ups, which usually last fewer than 24 hours, and manifest increased pain with walking, ascending or descending stairs or inclines, kicking his leg out, and “basically anything I do,” with pain reported as a 9 on a scale of 1 to 10 on a good day, and a 10 on a scale of 1 to 10 on a bad day; (4) the Veteran further reports functional loss during flareups as decreased range of motion by 70 percent and to involve “basically everything, can’t walk, no balance,” and can “only stand a few minutes;” (5) the Veteran’s left knee disability results in the following additional symptoms: less movement than normal; weakened movement due to muscle or peripheral nerve injury, etc.; disturbance of locomotion; interference with sitting; interference with standing; (6) the Veteran occasionally uses a wheelchair and constantly uses a cane to ambulate; (7) the Veteran’s left knee has a history of severe lateral instability; (8) testing revealed positive results on the following joint stability testing: (a) anterior instability (Lachman test): 1+ (0-5 millimeters); (b) posterior instability (Posterior drawer test): 1+ (0-5 millimeters); (c) medial instability: 1+ (0-5 millimeters); and (d) lateral instability: 1+ (0-5 millimeters); (9) regarding functional impact, the Veteran would benefit from the opportunity to walk on smooth, even surfaces, and he should avoid repetitive walking, inclines/declines, stairs, repetitive kneeling, squatting, and the use of ladders; (10) the Veteran’s left knee condition would affect his ability to lift heavy items, carry items for a long period of time, or stand for prolonged periods of time, and he would experience increased pain with any type of physically strenuous labor; and (11) no evidence of muscle atrophy, ankylosis, or a history of recurrent subluxation or effusion. 

The November 2019 VA examination report further noted the Veteran’s report that he cannot heel walk or toe walk, although he can squat and arise from sitting to standing position without difficulty, and that based upon his observable pain responses, “it is obvious” that the Veteran’s left knee condition would limit his “ability to perform repeated movement over time.”

The Board notes that a VA addendum opinion submitted in November 2019 clarifies that the decreased range of motion of the Veteran’s left knee “is not due to body habitus. The Veteran is [service-connected] for chondromalacia patella, left knee and slight instability, left knee. Chondromalacia patella encompasses the progressive symptoms of the [osteoarthritis] of [his] left knee.”

The Board further notes that the Veteran’s Form 10182 Notice of Disagreement submitted in January 2020 and again in March 2020 contain additional contentions regarding his service-connected left knee disability as follows: (1) his left knee condition currently manifests “frequent stiffness and flexibility issues;” (2) his current left knee condition causes him to “fall often due to not being able to control my legs;” and (3) his VA physician has advised that he needs a fourth total knee replacement but does not believe his “legs would hold up to another replacement.”

In consideration of the foregoing evidence, the Board hereby finds as follows: (1) a preponderance of the evidence of record weighs against an increased evaluation in excess of 10 percent under Diagnostic Code 5257 for the Veteran’s service-connected left knee disability, to include slight instability; and (2) an increased evaluation of 20 percent under Diagnostic Code 5003-5260, but not greater, for the Veteran’s service-connected left knee disability, to include degenerative arthritis and painful motion limited to 29 degrees of flexion, is warranted.

The Board finds that an increased evaluation in excess of 10 percent under Diagnostic Code 5257 is not warranted, as the competent evidence of record indicates that the Veteran’s service-connected left knee disability manifested symptoms more nearly approximating slight instability during this period. As noted above, the VA examination report reflect that the Veteran’s left knee disability manifests instability, and all four diagnostic stability tests indicated joint instability of the left knee. The Board also finds that, for the entire period on appeal, the assignment of an evaluation in excess of 10 percent under Diagnostic Code 5257 is not warranted, as competent evidence of record reflects that the Veteran’s left knee disability results in an overall disability picture that more closely approximates the criteria for a 10 percent rating for slight instability rather than the criteria for a 20 percent rating for moderate instability. See 38 C.F.R. § 4.71a, Diagnostic Code 5257. Although the box for “severe” instability was checked, clinical findings reflected muscle strength was 4/5 or 5/5 and the instability testing was at worst 1+. In other words, the clinical findings do not support a finding of moderate or severe instability. 

The Board also finds that the Veteran’s service-connected left knee disability warrants an increased evaluation of 20 percent under Diagnostic Code 5260 for limitation of flexion, as the record contains evidence that the Veteran’s left knee flexion has been limited to 29 degrees since November 7, 2019. 

As stated above, the November 2019 VA examination report reflects that the Veteran’s service-connected left knee disability manifests flexion limited to 29 degrees as estimated after repetitive use and during flare-ups. See 38 C.F.R. § 4.71a, Diagnostic Code 5260. Therefore, resolving all reasonable doubt in the Veteran’s favor, the Board finds that an increased evaluation of 20 percent under Diagnostic Code 5260 for the Veteran’s service-connected left knee disability is supported by the competent evidence of record. See Swain, 27 Vet. App. at 224; see also 38 C.F.R. § 4.6. However, in so finding, the Board also finds that the assignment of an evaluation in excess of 20 percent under Diagnostic Code 5260 is not warranted, as the preponderance of the evidence of record weighs against a finding that the Veteran’s left knee disability manifested extension limited to less than 29 degrees at any time during that period. See id. 

In addition, the November 2019 VA examination report reflects that the Veteran’s left meniscal condition is no longer symptomatic; accordingly, an evaluation under Diagnostic Code 5258 is not warranted. 

The Board has also considered whether the Veteran’s service-connected left knee disability warrants a higher disability rating due to functional loss caused by pain, weakness, fatigability, incoordination, or pain on movement of a joint. See 38 C.F.R. §§ 4.40, 4.45, 4.59; see also Mitchell, 25 Vet. App. at 37; DeLuca, 8 Vet. App. at 205-07. However, the current evaluation for the Veteran’s service-connected left knee disability under Diagnostic Code 5260 contemplates the impact of any complaints of pain, fatigue, swelling, weakness, or lack of endurance, and none of the VA examination reports found limitation of flexion fewer than 29 degrees. Thus, even considering the effect of pain and repetitive motion, the Veteran’s left knee functional limitation has never been found to manifest flexion limited to 15 degrees at any point during the period on appeal. Accordingly, the consideration of other functional limitation factors does not warrant a rating in excess of the ratings assigned as set forth herein. See 38 C.F.R. §§ 4.40, 4.45; see also DeLuca, 8 Vet. App. at 205-07.

In addition, because the evidence of record includes x-ray evidence establishing that the Veteran’s left knee disability manifests degenerative arthritis, the Board has also considered whether the Veteran’s left knee disability is entitled to a higher rating under Diagnostic Code 5003-5260. As stated above, degenerative arthritis is evaluated by the criteria enumerated in the General Rating Formula, which provides that in order to warrant an evaluation in excess of 20 percent, flexion of the knee must be limited to 15 degrees or less. See 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5260. On the contrary, for the entire period on appeal, the limitation of motion of the Veteran’s left knee was at most restricted to 29 degrees. Accordingly, the Board finds that a preponderance of the evidence of record weighs against a finding that the Veteran’s left knee disability is entitled to an increased evaluation in excess of 20 percent under Diagnostic Code 5003-5260.

Finally, the Board has also considered whether the Veteran’s service-connected left knee disability warrants the assignment of any additional disability ratings under other diagnostic codes at any point during the periods on appeal. See Schafrath, 1 Vet. App. at 595. However, because the record contains no evidence of ankylosis (Diagnostic Code 5256), removal of cartilage (Diagnostic Code 5859), extension limited to 20 degrees (Diagnostic Code 5261), malunion of the tibia and fibula (Diagnostic Code 5262), or genu recurvatum (Diagnostic Code 5263), the Board finds that no additional disability ratings are warranted in this case.

The Veteran has not specifically raised any other issues, nor have any other issues been reasonably raised by the evidence of record. See Doucette, 28 Vet. App. at 370.

Accordingly, and in consideration of the foregoing evidence, and resolving all reasonable doubt in favor of the Veteran, the Board finds as follows: (1) an increased evaluation of 20 percent under Diagnostic Code 5003-5260, but not greater, for the Veteran’s service-connected left knee disability, to include degenerative arthritis and painful motion limited to 29 degrees of flexion and extension, is warranted and (2) a rating in excess of 10 percent under Diagnostic Code 5257 for the Veteran’s service-connected left knee disability is denied, as the record contains no evidence during such period that the Veteran’s left knee disability manifested symptoms rising to the level of moderate instability. Accordingly, because the preponderance of the evidence weighs against the award of any additional increased evaluations, the benefit of the doubt doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

3. For the entire period on appeal, an increased evaluation in excess of 10 percent for the Veteran’s service-connected gastrointestinal disability, currently diagnosed as a hiatal hernia and gastrointestinal reflux disease (GERD), is denied. 

In September 2005, the Veteran was awarded service connection for his gastrointestinal disability, currently diagnosed as a hiatal hernia and gastrointestinal reflux disease (GERD), and was assigned a 10 percent evaluation, effective June 28, 2000. A January 2020 rating decision denied the Veteran’s claim for an increased evaluation in excess of 10 percent. 

As set forth in his January 2020 Notice of Disagreement, the Veteran contends that his service-connected gastrointestinal disability is entitled to an increased evaluation in excess of 10 percent on the grounds that his symptoms more closely approximate those enumerated in the VA rating criteria for a 30 percent evaluation, and that his ulcer is larger than noted in the November 2019 VA examination report. The Veteran further reports that his condition causes “persistent GERD symptoms with daily medication usage.” 

Because the VA Rating Schedule does not include a diagnostic code expressly pertaining to GERD, the Veteran’s service-connected gastrointestinal disability is currently evaluated by analogy under Diagnostic Code 7399-7346. See 38 C.F.R. § 4.27 (2021). 

Diagnostic Code 7346 governs hiatal hernias and provides as follows: (1) a 60 percent evaluation is warranted where the evidence of record demonstrates symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health; (2) a 30 percent evaluation is warranted where the evidence of record demonstrates symptoms of persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health; and (3) a 10 percent evaluation is warranted where the evidence of record demonstrates two or more of the symptoms for the 30 percent evaluation of less severity. See 38 C.F.R. § 4.114 (2021).

The effective date for the grant of service connection, in conjunction with a grant of entitlement to service connection, shall generally be the day following separation from active service or the date entitlement arose if the claim is received within one year of separation from service; otherwise, the effective date shall be the date of receipt of the claim, or the date the entitlement arose, whichever is later. See 38 U.S.C. § 5110; 38 C.F.R. §§ 3.400(b)(2)(i); (o)(2). When determining when the entitlement arose, an effective date for benefits can be no earlier than the date the disability at issue first manifested. See DeLisio v. Shinseki, 25 Vet. App. 45, 52 (2011). 

In this case, the Veteran filed the instant claim on October 16, 2019, seeking an increased evaluation for his service-connected gastrointestinal disability in excess of his current 10 percent evaluation under Diagnostic Code 7399-7346, effective June 28, 2000. Accordingly, the Board has considered whether the manifestations of the Veteran’s service-connected gastrointestinal disability warrant an increased evaluation in excess of 10 percent since October 16, 2018.

However, after careful review, the Board finds that for the entire period on appeal, the preponderance of the competent medical and lay evidence of record demonstrates that the Veteran’s service-connected gastrointestinal disability manifests chronic intermittent heartburn (pyrosis), regurgitation, and reflux but does not manifest dysphagia, substernal, arm, or shoulder pain, or considerable impairment of health as required by Diagnostic Code 7346 for a 30 percent evaluation. Accordingly, for the reasons set forth below, the Board finds that the Veteran’s service-connected gastrointestinal disability does not warrant an increased evaluation in excess of 10 percent under Diagnostic Code 7346. 

In November 2019, the Veteran was afforded a VA examination to evaluate his service-connected gastrointestinal disability, which culminated in a report diagnosing the Veteran with GERD and a hiatal hernia with reflux but no ulcer or other acute process. The November 2019 VA examination report further indicated the following: (1) a history of remote peptic ulcer disease and chronic intermittent heartburn for the past two to three years; (2) partial relief of heartburn despite very high dosage of proton pump inhibitors; (3) no history of gastrointestinal bleeding; (4) an esophagogastroduodenoscopy (EGD) dated April 2006, revealing erosive NSAID-induced gastritis, LA class A reflux esophagitis, and a small hiatal hernia; (5) treatment with omeprazole daily and Mylanta as needed; (6) reflux, regurgitation, and sleep disturbance caused by esophageal reflux; (7) frequency of symptom recurrence four times per year or more with an average duration of less than one day; and (8) no resulting functional impact on the Veteran’s ability to work. 

Accordingly, as all requested testing has been completed, and the record contains no evidence that the Veteran’s service-connected gastrointestinal disability manifests dysphagia, substernal, arm, or shoulder pain, or considerable impairment of health, the Board finds that, for the entire period on appeal, the preponderance of the evidence of record in this case weighs against an award of an increased evaluation in excess of 10 percent under Diagnostic Code 7346, and that the Veteran has been appropriately compensated for his service-connected gastrointestinal disability. See 38 C.F.R. § 4.114. 

The Veteran has not specifically raised any other issues, nor have any other issues been reasonably raised by the evidence of record. See Doucette v. Shulkin, 28 Vet. App. 366, 370 (2017).

Accordingly, in consideration of the foregoing evidence, the Board finds that for the entire period on appeal, the preponderance of the evidence of record weighs against the assignment of an increased evaluation under Diagnostic Code 7346 for the Veteran’s service-connected gastrointestinal disability. 

 

H. SEESEL

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board H. Marsdale

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.